OHIO HOSPITAL ASSOCIATION ET AL., APPELLEES, *v.* OHIO
DEPARTMENT OF HUMAN SERVICES, APPELLANT.

[Cite as *Ohio Hosp. Assn. v. Ohio Dept. of Human
Services* (1991), 62 Ohio St.3d 97.]

(No. 90–1580—Submitted September 17, 1991—Decided November 13, 1991.)

*Bricker & Eckler, James J. Hughes, Jr.* and *Catherine M. Ballard,* for appellees.

*Lee I. Fisher,* Attorney General; *Rishel, Myers & Kopech, James R. Rishel* and *David E. Northrop,* Special Counsel, for appellant.

WRIGHT, J. This case raises the following four issues: (1) whether former Ohio Adm.Code 5101:3-2-20 violates Section 1396a(a)(30)(A), Title 42, U.S.Code; (2) if so, whether the violation of federal Medicaid standards also violates former R.C. 5111.02(D); (3) whether the state is immune from suit for reimbursement of monies withheld under an invalid administrative rule; and (4) whether Section 1983, Title 42, U.S.Code provides the exclusive remedy for alleged violations of the Fourteenth Amendment.

## I

ODHS claims that Section 1396a(a)(30)(A), Title 42, U.S.Code does not set a minimum level of payment and thus cannot have been violated by the reduced reimbursement rates of former Ohio Adm.Code 5101:3-2-20. Section 1396a(a)(30)(A), Title 42, U.S.Code provides:

"(a) Contents.

"A State plan for medical assistance must—

" * * *

"(30)(A) provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan * * * as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care."

ODHS is correct in asserting that the statute does not set a minimum rate of reimbursement in recognition of the varying and limited nature of state resources. See *Briarcliff Haven, Inc. v. Dept. of Human Services* (N.D.Ga. 1975), 403 F.Supp. 1355; *Ostrow Pharmacies, Inc. v. Beal* (E.D.Pa.1975), 394 F.Supp. 22; *Pennsylvania Pharmaceutical Assn. v. Pa. Dept. of Pub. Welfare* (W.D.Pa.1982), 542 F.Supp. 1349. However, the courts below did not hold that Ohio Adm.Code 5101:3-2-20 violated a set minimum rate. The Court of Claims found that ODHS violated the statute by adopting the rule due to its own budgetary constraints and by failing to consider the rule's effect on efficiency, economy, and the quality of care.

The Medicaid statutes impose a duty on state programs to adequately reimburse their Medicaid providers. In interpreting Section 1396a(a)(13)(A) (the Boren Amendment),[3] the Supreme Court of the United States held that

---

3. The Boren Amendment provides in pertinent part:
"(a) Contents.
" * * * A State plan for medical assistance must—
" * * *
"(13) provide—

"the Boren Amendment imposes a binding obligation on States participating in the Medicaid program to adopt reasonable and adequate rates * * *." *Wilder v. Virginia Hosp. Assn.* (1990), 496 U.S. ——, at —— – ——, 110 S.Ct. 2510, at 2518–2519, 110 L.Ed.2d 455, at 468–469. The legislative history of the Boren Amendment indicates Congressional "intent that a State not develop rates under this section solely on the basis of budgetary appropriations * * *." H.R.Conf.Rep. No. 96–1479, 96th Cong., 2d Sess. 154, reprinted in 1980 U.S.Code Cong. & Adm.News 5526, 5944.

Although *Wilder* involved a challenge to per-diem charges for inpatient care, the selfsame analysis applies to the outpatient fees involved in this case. In *Wilder* the Supreme Court based its interpretation of the Boren Amendment on a variety of factors which follow.

The court held that the language of the Amendment is mandatory rather than precatory, and that the receipt of federal funds is expressly conditioned on compliance with the Amendment. *Id.* at ——, 110 S.Ct. at 2519, 110 L.Ed.2d at 469. The Boren Amendment states that "the state plan '*must*' 'provide for payment * * * of hospital(s)' according to rates the State finds are reasonable and adequate." *Id.* (quoting Section 1396a[a][13][A]). Section 1396a(a)(30)(A), as quoted *supra*, contains similar mandatory language.

Just as important, the court relied on the understanding between Congress and the states that the Medicaid Act granted enforceable rights to health care providers. *Id.* at —— – ——, 110 S.Ct. at 2521–2523, 110 L.Ed.2d at 471–473. The same reasons relied on by the United States Supreme Court in *Wilder* support a decision that ODHS violated Section 1396a(a)(30)(A) by basing its decision solely on budgetary concerns.

This court has applied *Wilder* to a suit challenging ODHS's decision to reduce the ceiling for administrative and general services cost reimbursement from $12.55 to $10.80. *Ohio Academy of Nursing Homes, Inc. v. Barry* (1990), 56 Ohio St.3d 120, 564 N.E.2d 686. In *Barry*, we allowed Medicaid providers to sue in the court of common pleas for injunctive relief or a declaratory judgment under Section 1983, Title 42, U.S.Code. We also recog-

---

"(A) for payment * * * of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State * * *) * * * which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access * * * to inpatient hospital services of adequate quality * * *." Section 1396a(a)(13)(A), Title 42, U.S.Code.

nized that Medicaid providers have a legitimate property interest in the reimbursement rate. Today's decision is a natural extension of that case.

Courts have invalidated a variety of rate cuts because the state did not make findings that its rates were reasonable and adequate. The United States Court of Appeals for the Tenth Circuit invalidated a plan where the state used a "budget adjustment factor" to divide its median cost of care in half. *AMISUB (PSL), Inc. v. Colorado Dept. of Social Services* (C.A.10, 1989), 879 F.2d 789, 796, certiorari denied (1990), 496 U.S. ——, 110 S.Ct. 3212, 110 L.Ed.2d 660 (applying Section 1396a[a][13][A]). Similarly, a federal district court enjoined Illinois from deferring 23.5 percent of its final hospital reimbursement, due to a budgetary crisis, because the plan failed to satisfy the federal requirement that Medicaid reimbursement rates be sufficient to ensure quality care. *Illinois Hosp. Assn. v. Illinois Dept. of Public Aid* (N.D.Ill.1983), 576 F.Supp. 360, 370, 372.

The trial court below found that Ohio Adm.Code 5101:3-2-20 was adopted solely for budgetary reasons without due consideration of its effect on the quality of care. We defer to that finding of fact as it is amply supported by the record. Accordingly, we hold that former Ohio Adm.Code 5101:3-2-20 violates Title XIX of the Social Security Act, Section 1396a(a)(30)(A), Title 42, U.S.Code, because it was implemented solely for budgetary reasons, without consideration of its effect on the quality of care provided by the Medicaid program.

## II

The next issue presented is whether a violation of the federal Medicaid statute also violates state law. ODHS asserts that the state is not liable to the hospitals under former R.C. 5111.02(D) (subsequently renumbered as 5111.012, without amendment). The department relies for authority on a series of cases which hold that statutory duties owed by the government to the general public may not be the basis of monetary liability to an individual suing for the breach of that duty. *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468; *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 543 N.E.2d 1188; *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 543 N.E.2d 1242. None of these authorities is applicable here. This case does not involve a general member of the public suing in tort for the violation of a statutory duty that benefits all members of the public. The authorities cited might apply if this were a tort suit brought by a patient alleging that the administrative rule caused diminished access to medical care and a resulting injury. However, these authorities have no bearing on a suit brought by a Medicaid provider challenging the reimbursement rate. The

provider has a direct interest in its reimbursement rate, which surpasses the broad, generalized interests raised in *Sawicki* and its progeny.

Former R.C. 5111.02(D) provided that:

" * * * Expenditures for medical assistance shall be made from funds appropriated to the department of human services for public assistance subsidies. The program shall conform to the requirements of the 'Social Security Act,' 49 Stat. 620 (1935), 42 U.S.C. 301, as amended."

Today, we hold that former R.C. 5111.02(D) incorporates the requirements of the Social Security Act, and former Ohio Adm.Code 5101:3-2-20 also violates state law because it does not meet the requirements of the Medicaid statute.

### III

Notwithstanding its violation of federal and state law, ODHS asserts that the state is immune from money damages for the promulgation of invalid administrative rules. Appellant urges that because administrative rules could be challenged in the court of common pleas prior to the enactment of the Court of Claims Act, this suit does not fall within the waiver of sovereign immunity granted by R.C. 2743.02(A)(1). The Court of Claims Act waives sovereign immunity and establishes the Court of Claims, but also states, "[t]o the extent that the state has previously consented to be sued, this chapter has no applicability." R.C. 2743.02(A)(1). Appellant is essentially challenging the jurisdiction of the Court of Claims over this matter and claiming that the state has not waived its immunity from liability for money damages that result from an invalid administrative rule.

The Court of Claims has jurisdiction over this action pursuant to R.C. 2743.02 and 2743.03. "A major purpose of the Court of Claims Act was to centralize the filing and adjudication of all claims against the state. The Court of Claims was created to become the sole trial-level adjudicator of claims against the state, with the narrow exception that specific types of suits that the state subjected itself [to] prior to 1975 could be tried elsewhere as if the defendant was a private party." *Friedman v. Johnson* (1985), 18 Ohio St.3d 85, 87, 18 OBR 122, 124, 480 N.E.2d 82, 84. The Court of Claims has exclusive, original jurisdiction in all civil suits for money damages even where ancillary relief such as an injunction or declaratory judgment is sought. *Friedman, supra.* However, a suit that seeks only injunctive or declaratory relief may be brought against the state in the court of common pleas. *Racing*

*Guild of Ohio, Local 304 v. State Racing Comm.* (1986), 28 Ohio St.3d 317, 320, 28 OBR 386, 388–389, 503 N.E.2d 1025, 1028.[4]

We hold that this suit is within the jurisdiction of the Court of Claims because of the nature of the claims raised and the relief sought. The hospitals initially sought relief for violations of their provider agreements and an earlier settlement agreement between certain of the parties, as well as for violations of federal law, state law, the United States Constitution, and the Ohio Constitution. The complaint sought declaratory, injunctive, and monetary relief. The claims for violation of the provider agreements and an earlier settlement agreement are within the exclusive jurisdiction of the Court of Claims to the extent that the hospitals allege that their contractual rights have been violated and seek monetary relief. R.C. 2743.02 and 2743.03. The Court of Claims actually found that the provider agreements had been violated under state contract law, but the court of appeals held that this determination was harmless error.

Appellant also raises the applicability of R.C. 2743.02 to challenge the court's order that ODHS reimburse all affected hospitals for all monies withheld under the budget reductions. Appellant relies on *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, to demonstrate that the waiver of immunity granted by R.C. 2743.02 does not apply to the promulgation of invalid administrative rules. ODHS argues that rule-making is the product of highly discretionary policymaking and also relies on the language in R.C. 2743.02(A)(1) which provides that liability be determined "in accordance with the same rules of law applicable to suits between private parties * * *." According to appellant, this language demonstrates that immunity to monetary damages is waived only for private causes of action (such as tort and contract).

However, sovereign immunity is not applicable to the relief granted in this case. The order to reimburse Medicaid providers for the amounts unlawfully withheld is not an award of money damages, but equitable relief. The

---

4. It is interesting to note that after the commencement of this suit, the General Assembly clarified its intent in an amendment to R.C. 2743.03.

R.C. 2743.03(A)(2) currently provides:

"If the claimant in a civil action as described in division (A)(1) of this section also files a claim for a declaratory judgment, injunctive relief, or other equitable relief against the state that arises out of the same circumstances that gave rise to the civil action described in division (A)(1) of this section, the court of claims has exclusive, original jurisdiction to hear and determine that claim in that civil action. This division does not affect, and shall not be construed as affecting, the original jurisdiction of another court of this state to hear and determine a civil action in which the *sole* relief that the claimant seeks against the state is a declaratory judgment, injunctive relief or other equitable relief." (Emphasis added.)

distinction between tort damages and money claimed through specific performance of a legal duty was recently addressed by the United States Supreme Court in *Bowen v. Massachusetts* (1988), 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749. *Bowen* involved a state suit against the federal government for Medicaid monies due under federal law. The court quoted extensively from Judge Bork's opinion in *Maryland Dept. of Human Resources v. Dept. of Health & Human Services* (C.A.D.C.1985), 763 F.2d 1441:

" ' * * * Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies "are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." D. Dobbs, *Handbook on the Law of Remedies* 135 (1973). Thus, while in many instances an award of money is an award of damages, "[o]ccasionally a money award is also a specie remedy." *Id.* * * *

" 'In the present case, Maryland is seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be, that Maryland will suffer or has suffered by virtue of the withholding of those funds. If the program in this case involved in-kind benefits this would be altogether evident. The fact that in the present case it is money rather than in-kind benefits that pass from the federal government to the states (and then, in the form of services, to program beneficiaries) cannot transform the nature of the relief sought—specific relief, not relief in the form of damages. * * * ' " (Citation omitted; emphasis *sic.*) *Bowen, supra,* 487 U.S. at 895, 108 S.Ct. at 2732–2733, 101 L.Ed.2d at 764–765.

We find this distinction applicable to this suit. The reimbursement of monies withheld pursuant to an invalid administrative rule is equitable relief, not money damages, and is consequently not barred by sovereign immunity.

IV

Finally, ODHS challenges the court of appeals' determination.that although a Section 1983 action cannot be brought in the Court of Claims, the hospitals are entitled to raise their constitutional claims directly under the Fourteenth Amendment. Because we find that.the hospitals are entitled to relief under Section 1396a(a)(30)(A), Title 42, U.S.Code, and former R.C. 5111.02(D), we need not address this alternate basis for relief. "No court should * * * indulge the constitutional issue if the litigant is entitled to relief upon other grounds." *Burt Realty Corp. v. Columbus* (1970), 21 Ohio St.2d 265, 269, 50 O.O.2d 491, 493, 257 N.E.2d 355, 358; *Greenhills Home Owners Corp. v. Greenhills* (1966), 5 Ohio St.2d 207, 34 O.O.2d 420, 215 N.E.2d 403.

106

For the foregoing reasons, we affirm the judgment of the court of appeals and we vacate, as moot, the portion of the court's decision that addresses the constitutionality of former Ohio Adm.Code 5101:3-2-20.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in judgment only.

